The **WASHINGTON POST COMPANY**, Plaintiff,

v.

**U.S. DEPARTMENT OF the AIR FORCE**, Defendant.

Civ. A. No. 85–0153.

United States District Court, District of Columbia.

Aug. 29, 1985.

---

Boisfeuillet Jones, Jr. and Patrick J. Carome, Washington, D.C., for plaintiff.

Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

BARRINGTON D. PARKER, District Judge.

Before the Court are plaintiff's motion for partial summary judgment and defendant's motion for summary judgment in the

above-captioned matter. Plaintiff is a newspaper of general circulation which has filed suit pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 to compel disclosure of a document compiled by the Inspector General of the Air Force. Jurisdiction of this action lies under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1361. For the reasons set forth below, plaintiff's motion for partial summary judgment is granted, and defendant's motion for summary judgment is denied.

## I.

## BACKGROUND

On June 15, 1984, the Secretary of the Air Force issued a press release describing an inquiry undertaken by the Inspector General of the Air Force to determine the effectiveness of inventory practices implemented by the Air Force. The result of this inquiry was the compilation of a "Functional Management Inspection of Supply Retention and Excess Policy PN 84–6–8, 1 December 83—14 June 84" ("FMI"). The document is seventy-six pages in length and divided into three parts. The first of these three parts, a four page executive summary of the FMI, was disclosed to the public in the June 15 press release.

On June 19, 1984, plaintiff submitted a FOIA request, seeking disclosure of the entire text of the report. Defendant denied plaintiff's request on August 22, 1984, on the grounds that the material was exempt under 5 U.S.C. § 552(b)(5). On October 3, 1984, plaintiff filed an administrative appeal, which was denied on November 27, 1984. Having thus exhausted the administrative remedies available to it, plaintiff commenced this action on January 16, 1985.

## II.

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The Air Force denied plaintiff's request on the basis of the exemption provided for in 5 U.S.C. § 552(b)(5) ("Exemption 5"). This section exempts from FOIA disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency ..." The purpose of this exemption is to encourage free expression of ideas within the government during the process of deliberation, to protect against premature disclosures of proposed policies, and to protect against public confusion by disclosing rationales that were not the basis for agency action. *Coastal States Gas Corporation v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980) ("Coastal States"); *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973); *Soucie v. David*, 448 F.2d 1067 (D.C. Cir.1971); *Bristol-Meyers Company v. Federal Trade Commission*, 424 F.2d 935 (D.C.Cir.1970).

### A. *Application of the Executive Privilege Under Exemption 5*

 Among those privileges encompassed by Exemption 5 is the executive or deliberative process privilege. *National Labor Relations Board v. Sears, Roebuck and Company*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975) ("Sears"). This privilege protects advice, recommendations, and opinions which are part of the deliberative decision making processes of government. *Id.* However, the privilege is to be narrowly construed to the extent such a construction is consistent with the efficient operation of the government. *Soucie v. David*, 448 F.2d 1067, 1078 (D.C. Cir.1971).

It is clear to the Court that at least some portions of the FMI were initially protected from disclosure under the deliberative process privilege. The inspection initiated by the Air Force of its own policies and procedures was an effort to discover, evaluate, and remedy specific problem areas. Such an internal self-evaluative program is protected under Exemption 5. *Ashley v. Department of Labor*, 589 F.Supp. 901, 909 (D.D.C.1983) (quoting *Sears*, 421 U.S. at 151 n. 18, 95 S.Ct. at 1517 n. 18).

■ However, a corollary to the deliberative process privilege, is the rule that the adoption of a report's recommendations as official policy vitiates the privilege. In *Sears*, the Court noted that

> if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.

*Id.* at 161, 95 S.Ct. at 1521. In *Coastal States*, the court of appeals similarly noted that "even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on the issue or is used by the agency in its dealings with the public." *Id.* at 866. In this case, whatever executive privilege was enjoyed by the Air Force at the time the Inspector General compiled the FMI, that privilege was lost when the Air Force decided to adopt the recommendations of the FMI as its official policies. The press release that announced the decision of the Air Force to revise its supply retention policies describes the findings of the Inspector General in the FMI and illustrates that the basis for the agency action is the FMI report. Moreover, the press release stated that the FMI recommendations had been adopted in the five-point program initiated by the Secretary. Therefore, those parts of the FMI which were adopted by the Air Force as official policy are not within Exemption 5.

**B.** *Application of the Doctrine of Waiver*

■ Plaintiffs argue that the revelations of the Air Force to date constitute a waiver of the protection afforded under Exemption 5. Specifically, plaintiff notes that the executive summary is based on and summarizes the information contained in the FMI. Thus, plaintiffs argue that there is no cognizable policy served by continued withholding of the factual material underlying the information released in the executive summary. *See Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 257–58 (D.C.Cir.1977) (neither of the policy objectives which Exemption 5 is designed to serve is relevant to a claim of secrecy for information which has already been disclosed to persons outside the agency).

Defendant counters that the executive summary does not constitute a waiver because it summarizes merely the *nature* of the findings and recommendations and not the findings and recommendations themselves. Defendant also asserts that if the Court were to adopt plaintiff's reading of the case law, executive agencies would become more cautious in what information they disclosed.

Although the policy objectives presented by defendant are relevant, it appears from the executive summary that the Inspector General has presented in outline form the entire contents of the FMI, albeit in summary form, omitting only the details supporting the conclusions set forth in the summary. For example, Part 4(c) of the executive summary states that at all locations under consideration, "parts were found that could have been repaired but were instead sent to disposal." Were one to examine the detailed findings and recommendations with respect to this statement, one would expect to find a list of parts that had been found at various locations which could have been repaired, including the kinds of parts, the quantity, the locations at which they were found, and perhaps information concerning the decision to dispose of the parts. It strains the bounds of reason to argue that only the nature of the findings and recommendations were included in the summary. Therefore, with respect to those parts of the executive summary which disclose information concerning findings and recommendations contained in the FMI, the Air Force has waived any privilege under Exemption 5 by releasing the executive summary.

## III.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has advanced two independent bases in support of its motion for

summary judgment. First, defendant urges that non-exempt factual portions of the FMI are so intertwined with deliberative material that the factual items are not segregable and thus are protected under Exemption 5. Second, defendant argues that it enjoys a privilege for confidential witness statements. Neither of these bases support granting summary judgment for defendants.

## A. *Whether the Factual Materials are Segregable*

■ As a general rule, regardless of whatever other privileges may apply, factual material must be disclosed while advisory material may be withheld. *Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). The Air Force has alleged the factual material in the FMI is "inex-, tricably intertwined" with the predecisional, advisory portions of the document. *Ryan v. Department of Justice*, 617 F.2d 781, 790–91 (D.C.Cir.1980). Of course, to some extent it does not matter whether the factual information is inextricably intertwined with the deliberative material, if the deliberative material is not privileged. However, with respect to the remaining material that may be privileged, defendant has not satisfied its burden of proving that the factual information cannot be severed. Defendant has merely stated:

> We attempted to segregate the 'factual' material from the deliberative material. However, it was not possible to segregate factual material originating from witnesses from that originating from computer documentation since one leads to the other and vice versa. The report itself frequently makes no distinction as to where the information originated. The inspection methodology precludes us from unraveling the facts from opinions to provide plaintiff with a statement of fact. Functionally, it is also impossible to segregate the facts from the deliberative material since to do so would reveal

each recommendation supported by the accompanying facts.

First Hatch Declaration, par. 6.

Although it is difficult from the description provided by defendant to determine whether its assertion is accurate, it has provided little empirical support for its position. Given that the FMI is the result of a series of fact-finding missions, there is reason to conclude that the FMI is largely—if not primarily—factual in nature. Indeed, the executive summary strongly suggests that the underlying document is highly fact-intensive. Yet, the Air Force has done little more than to state conclusorily allegations that the facts cannot be severed from the opinions. A greater showing would be required by defendant in order to prevail on its claim of exemption. *Playboy Enterprises, Inc. v. Department of Justice*, 677 F.2d 931, 935 (D.C.Cir.1982). Surely, more is to be expected from the government upon its own motion for summary judgment. Therefore, the government has not demonstrated that it is entitled to judgment as a matter of law with respect to this issue.

## B. *Whether Defendant Enjoys a Privilege for Confidential Witness Statements*

■ Defendant claims that it enjoys a privilege with respect to the FMI because the report is based in part on confidential statements made by witnesses. *Machin v. Zuckert*, 316 F.2d 336 (D.C.Cir.1963), *cert. denied*, 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963). *Machin* and its progeny held that statements included in an investigative report would be privileged if made to air crash investigators upon assurances of confidentiality. The rationale for this rule is that the privilege encourages those with pertinent information to cooperate with disaster investigators. The privilege was applied in an Exemption 5 context in *United States v. Weber Aircraft Corporation*, 465 U.S. 792, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984).

However, even though the privilege may be legally available in the instant case, it is factually inappropriate. It appears from

the executive summary and from the statements of General Hatch that it would be impossible to determine even from the full FMI the source of any particular information.

We attempted to segregate the 'factual' material from the deliberative material. However, it was not possible to segregate factual material originating from witnesses from that originating from computer documentation since one leads to the other and vice versa. *The report itself frequently makes no distinction as to where the information originated.*

First Hatch Declaration, par. 6 (emphasis added).

This anonymous format appears to be sufficient to guarantee that disclosure of the FMI will not breach any assurances of non-attribution or discourage those with information relevant to subsequent Air Force internal investigations to cooperate with the investigators. If defendant, however, can identify particular instances where disclosure would breach a protectible confidence, it may specify to the Court the particular circumstances. Absent a more specific showing, the Air Force is not entitled to summary judgment as to this issue.

## IV.

### CONCLUSION

For the reasons detailed above, plaintiff is entitled to summary judgment with respect to those parts of the FMI that have been adopted as official Air Force policy and with respect to those findings and recommendations which have been effectively disclosed by virtue of the release of the Executive Summary. Defendant is expected to make a good faith effort to release this information pursuant to this Court's Memorandum and Order.

With respect to the issue of factual segregation, defendant has not met its burden of demonstrating that it is entitled to judgment as a matter of law. It appears that a genuine issue of material fact exists as to whether the factual material in the FMI can be segregated from the deliberative material. With respect to the issue of confidential witness statements, there exists at the very least a genuine issue of material fact as to whether any confidential assurances given in the course of compiling the FMI would in fact be breached by disclosure of the remainder of the document.

Therefore, it is by the Court this 29th day of August, 1985,

### ORDERED

That plaintiff's motion for partial summary judgment is granted; and

That defendant's motion for summary judgment is denied; and

That defendant shall prepare and file with the Court by September 23, 1985 a detailed Vaughn index of the document at issue.