[No. 30248-9-II. Division Two. October 5, 2004.]

THE BUILDING INDUSTRY ASSOCIATION OF WASHINGTON, ET AL., *Appellants*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Greg Overstreet* (of *Perkins Coie, L.L.P.*) and *Timothy D. Ford*, for appellants.

*Christine O. Gregoire, Attorney General*, and *Michael K. Hall, Assistant*, for respondent.

QUINN-BRINTNALL, C.J. — Building Industry Association of Washington (BIAW) and two newspaper industry associations sought disclosure of ergonomics-related voluntary compliance reports under the Washington public disclosure act (PDA). They appeal the trial court's decision to award them PDA penalties on a per day, not per record, basis. The Department of Labor and Industries (L&I) cross-appeals the trial court's decision to order disclosure of the reports, contending that the Washington Industrial Safety and Health Act (WISHA), chapter 49.17 RCW, exempts public disclosure of these reports. We hold that the legislature expressly exempted these WISHA reports from public disclosure. Therefore, we do not address the parties' arguments regarding the proper calculation of the penalty amount, and we reverse the penalty, attorney fee, and costs awards.

## FACTS

On March 26, 2002, the BIAW[1] filed a PDA public records request[2] with L&I to determine how L&I monitored com-

---

[1] BIAW describes itself as "the state's largest trade association with over 10,000 business members involved in construction and homebuilding projects, and related business activities." Br. of Appellant BIAW at 3.

[2] Attached to BIAW's original records request as an example of what it sought was a January 7, 2002 letter from Gary Moore, L&I Director, to Wal-Mart Stores,

pliance with its own ergonomics rules.[3] Within five business days of receipt, L&I advised BIAW that it would need an additional 30 days to complete the request. On April 29, 2002, L&I sent a letter to BIAW that identified consultation reports addressing ergonomics rules but denied disclosure, citing a WISHA exemption for "[i]nformation obtained . . . as a result of employer-requested consultation and training services" under RCW 49.17.250(3). 1 Clerk's Papers (CP) at 32. On May 2, BIAW sought administrative review of the decision, and on May 10, L&I again denied BIAW's disclosure request.

On September 4, 2002, Allied Daily Newspapers of Washington[4] and the Washington Newspaper Publishers Association[5] (hereinafter collectively referred to as the Newspapers) joined BIAW's public records request for the employers' voluntary ergonomic consultation reports. BIAW filed suit in Thurston County Superior Court on September 9, 2002. The same day, BIAW moved that L&I show cause why it should not disclose the reports. On September 11, 2002, the Newspapers joined BIAW as co-plaintiffs in the lawsuit to compel disclosure.

On October 25, 2002, the trial court orally ruled that the reports "are available for public inspection at [L&I]." Report of Proceedings (RP) (Oct. 25, 2002) at 29.

---

Inc. The letter recounts Moore's visit to a Wal-Mart distribution center in Texas. Moore characterizes certain distribution center tasks as falling into a "caution zone" under our state ergonomics rules, but states that the activities are within "the employer's 'safe harbor.' " 1 Clerk's Papers (CP) at 29. BIAW notes that our ergonomics rules do not discuss or define safe harbors.

[3] Ergonomics is defined as "the science and practice of designing jobs or workplaces to match the capabilities and limitations of the human body." WAC 296-62-05150.

[4] A not-for-profit association representing 27 daily newspapers and the Washington State Bureau of the Associated Press.

[5] A not-for-profit association representing 110 community newspapers in Washington.

[O]nce [L&I] is required to disclose to specific individuals, other than employers from whom they obtained the information for their voluntary service reports, . . . they take themselves outside the confidentiality protection that is earlier provided in the statute.

RP (Oct. 25, 2002) at 29. Although the court required disclosure of the reports, it also stated that it would permit some redaction.

L&I submitted its "Proposed Principles of Redaction" on November 1. 3 CP at 509. But the trial court found that the submission was not done in good faith and directed that only individual employee names be redacted from the reports. L&I disclosed the consultation reports on November 18, 2002. At that time, the court had yet to award penalties or fees under the PDA.

A penalty hearing was held on March 5, 2003. The trial court followed Division One's January 6, 2003 opinion in *Yousoufian v. Office of King County Executive*, 114 Wn. App. 836, 60 P.3d 667, *review granted*, 150 Wn.2d 1001 (2003), and did not award penalties per record.[6] Instead, the trial court awarded a penalty of $10 per day from April 2, 2002, until its October 25, 2002 redaction order and $75 per day from October 25, 2002, until the November 18 disclosure. This resulted in a penalty amount of $3,925 for BIAW and $2,305 for the Newspapers. The trial court also awarded BIAW and the Newspapers their attorney fees and costs under the PDA.

BIAW and the Newspapers appealed, contending that the PDA penalty should be calculated on a per-record basis. L&I cross appealed, challenging the trial court's determination that the records were disclosable and the corresponding award of penalties, attorney fees, and costs for nondisclosure.

To protect worker health and safety interests, the legislature exempted WISHA's voluntary ergonomic consulta-

---

[6] At the hearing, BIAW and the Newspapers moved for a stay until the Supreme Court issued a decision in *Yousoufian*, but the trial court denied the motion.

tion reports from disclosure under the PDA. Accordingly, we hold that the penalty, attorney fee, and costs awards to BIAW and the Newspapers were improper.

ANALYSIS

THE PDA

The PDA was passed by initiative in 1972. *See* LAWS OF 1973, ch. 1; RCW 42.17.250-.348. The act requires that *all* state and local agencies disclose any *public record* upon request unless it falls within certain specific enumerated exemptions. RCW 42.17.260(1). These include the exemptions set out in RCW 42.17.260(6), RCW 42.17.310, and RCW 42.17.315, as well as any *"other statute* which exempts or prohibits disclosure of specific information or records." RCW 42.17.260(1) (emphasis added).

 The central purpose of the PDA is " 'preservation of the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions.' " *King County v. Sheehan*, 114 Wn. App. 325, 335, 57 P.3d 307 (2002) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS* II)); RCW 42.17.251. The PDA is "a strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978); *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997); *PAWS* II, 125 Wn.2d at 251. We liberally construe the act's disclosure provisions and narrowly construe its exemptions. *Sheehan*, 114 Wn. App. at 336 (citing RCW 42.17.251; RCW 42-.17.010(11); *PAWS* II, 125 Wn.2d at 251; *Amren*, 131 Wn.2d at 31). An agency must prove that its refusal to disclose requested information "is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.17.340(1); *Sheehan*, 114 Wn. App. at 336.

 If the requested material contains both exempt and nonexempt material, the exempt material may be

redacted, but the remaining material must be disclosed. RCW 42.17.310(2); *Amren*, 131 Wn.2d at 32. As a general rule, provisions in "other statutes" which exempt or prohibit disclosure of specific information or records are incorporated into the PDA. RCW 42.17.260(1). Unless such other statutes conflict with the PDA, we treat them as *supplementing* the PDA. *Deer v. Dep't of Soc. & Health Servs.*, 122 Wn. App. 84, 91, 93 P.3d 195 (2004); *PAWS II*, 125 Wn.2d at 261-62 (citing RCW 42.17.920). If an exemption statute conflicts with the PDA, the PDA controls. *PAWS II*, 125 Wn.2d at 262 (citing RCW 42.17.920). Thus, if another statute (1) does not conflict with the act, and (2) either exempts or prohibits disclosure of specific public records in their entirety, then (3) the information may be withheld in its entirety. *PAWS II*, 125 Wn.2d at 262.[7]

L&I argues that to protect worker health and safety the legislature enacted RCW 49.17.250(3) to exempt public disclosure of the records of voluntary ergonomic consultations. The trial court concluded that requiring these reports to be made available to employees and their collective bargaining representatives vitiated confidentiality: "Because of this requirement, the reports are no longer confidential and are subject to public inspection and disclosure pursuant to RCW ch. 42.17 thirty days after they are received by the employer." CP at 511 (conclusion of law 5). L&I asserts that the trial court erred.

 Because the record here consists of affidavits, memoranda, and other documentary evidence, we stand in the same position as the trial court and our review of the record is de novo. *Violante v. King County Fire Dist. No. 20*, 114 Wn. App. 565, 568, 59 P.3d 109 (2002) (citing *PAWS II*, 125 Wn.2d at 252). *See Hangartner v. City of Seattle*, 151 Wn.2d 439, 447, 90 P.3d 26 (2004). By enacting RCW 49.17.250(3), the legislature exempted L&I's voluntary er-

---

[7] This applies only to those exemptions explicitly identified in other statutes and does not allow a court " 'to imply exemptions but only allows specific exemptions to stand.' " *PAWS II*, 125 Wn.2d at 262 (quoting *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 800, 791 P.2d 526 (1990)).

gonomic consultation records from public disclosure. The legislature clearly did not intend that requiring L&I to release the WISHA reports to the employees whom the consultations were intended to protect would vitiate their exemption from public disclosure. To the contrary, the legislature deemed that confidentiality of the reports was necessary to promote employers' voluntary participation in the program.[8]

WISHA

The legislature designed WISHA's voluntary consultation system to improve workers' safety by encouraging cooperative efforts by employers and L&I. RCW 49-.17.050(8) establishes a voluntary compliance program for employers, which includes on-site health and safety consultations with L&I representatives. At an employer's request, L&I will conduct consultation visits to address "the interpretation and applicability of safety and health standards to the conditions, structures, machines, equipment, apparatus, devices, materials, methods, means, and practices in the [requesting] employer's work place." RCW 49.17.250(1). L&I's representative consults with the employer and employees to make recommendations to eliminate workplace hazards. RCW 49.17.250(2). The visit is a consultation, not an inspection. No civil penalties will be assessed unless the visit discloses a serious violation of the health and safety standards[9] *and* the employer fails to correct it. RCW 49.17.250(2).

In 1991, the legislature amended WISHA to exempt these employer-requested consultations from public inspection

---

[8] The legislature juxtaposed these two caveats:

Information obtained by [L&I] as a result of employer-requested consultation and training services *shall be deemed confidential and shall not be open to public inspection.* Within thirty days of receipt, *the employer shall make voluntary services reports available to employees or their collective bargaining representatives for review.*

RCW 49.17.250(3) (emphasis added). We are required to construe statutes as a whole, considering all provisions in relation to each other and giving effect to each provision. *Wright v. Engum*, 124 Wn.2d 343, 878 P.2d 1198 (1994).

[9] *See* RCW 49.17.180(6).

and to maintain confidentiality of the consultation reports for the affected workers.

> Information obtained by [L&I] as a result of employer-requested consultation and training services shall be deemed confidential and shall not be open to public inspection. Within thirty days of receipt, the employer shall make voluntary services reports available to employees or their collective bargaining representatives for review. Employers may satisfy the availability requirement by requesting a copy of the reports from [L&I].

RCW 49.17.250(3). *See* Laws of 1991, ch. 89, § 2. The legislature enacted this amendment with full knowledge of existing public disclosure laws. *Thurston County v. Gorton*, 85 Wn.2d 133, 138, 530 P.2d 309 (1975) (legislature is presumed to have full knowledge of existing laws).[10]

Construction of a statute is a question of law which we review de novo under the error of law standard. *City of Pasco v. Pub. Employment Relations Comm'n*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys. v. Util. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989). We give effect to the intent of the legislature, and begin our review with the statute's plain language. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). The "plain meaning" rule includes not only the ordinary meaning of the words, but also the underlying legislative purposes. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 645, 62 P.3d 462 (2003). A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable. *First Class Cartage, Ltd. v. Fife Serv. & Towing, Inc.*, 121 Wn. App. 257, 266, 89 P.3d 226 (2004) (citing *Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles*, 148 Wn.2d 224, 239-40, 59 P.3d 655 (2002), *cert. denied*, 538

---

[10] Moreover, while the bill was pending in the House Commerce and Labor Committee, the Executive Director of Washington's Public Disclosure Commission wrote to the committee chair in January 1991, urging the committee to "consider carefully, before approving this bill, its apparent conflict with" the PDA. 1 Suppl. CP at 675.

U.S. 1057 (2003)). Where a statute is unambiguous, legislative intent is determined from the language of the statute alone. *Hangartner*, 151 Wn.2d at 452 (citing *State v. Johnson*, 104 Wn.2d 179, 181, 703 P.2d 1052 (1985)).

Here, the plain language of the WISHA statute prohibits public inspection of L&I ergonomic consultations voluntarily requested by employers. The general mandate that the PDA be liberally construed[11] does not permit us to ignore the plain language of WISHA's specific public disclosure exemption. *See Deer*, 122 Wn. App. at 90-91. Here, the legislature balanced worker safety against the policy of open government. It determined that (1) in order for the WISHA voluntary consultation program to be effective, participating businesses must be granted confidentiality, and (2) the information obtained and consultation records provided would not be open to public inspection.[12] The legislature expressively provided that these worker safety consultation records are exempt from disclosure under RCW 49.17.250(3). As a court, we have no authority to thwart this clear legislative mandate.

The Newspapers assert that the statute's required disclosure of the consulting reports (to a limited group of affected employees and their union representatives) vitiated the statute's confidentiality provision. They argue that "when the contents of a document are provided to a large group they are no longer 'confidential.'" Reply Br. of Appellant Newspapers at 19 (citing *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 38, 769 P.2d 283 (1989); *Ames v. City of Fircrest*, 71 Wn. App. 284, 296, 857 P.2d 1083 (1993); *Columbian Publ'g Co. v. City of Vancouver*, 36 Wn. App. 25, 30, 671 P.2d 280 (1983)). But two of the cases on which the Newspapers rely do not support their position because they dealt with disclosure to the *media*, not private businesses and affected private workers. *Columbian Publishing* stated

---

[11] *See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS* II); *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993).

[12] RCW 49.17.250 describes the program.

in dicta that a police association had waived any claim of privacy by going to the media. 36 Wn. App. at 30. *Ames*, which involved a police chief's defamation suit against a city for release of information to a newspaper, held that even if the "essential to effective law enforcement" PDA exception applied, a *press release* had already revealed the relevant information. 71 Wn. App. at 296. The third case the Newspapers cite, *Spokane Police Guild*, specifically found that two different PDA exceptions did not apply and, instead, permitted disclosure. 112 Wn.2d 30. It, too, is inapplicable to our analysis.[13]

The Newspapers also cite cases addressing provisions of the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552.[14] A close look reveals that the cited cases address particular FOIA disclosure exceptions or involve factual and legal circumstances differing substantially from the present case.[15]

---

[13] In a statement of additional authority (RAP 10.8) filed on August 5, 2004, the Newspapers draw our attention to a passage from *Laborers International Union of North America, Local No. 374 v. City of Aberdeen*, 31 Wn. App. 445, 449, 642 P.2d 418, *review denied*, 97 Wn.2d 1024 (1982). That case dealt with whether the deletion of certain details before disclosure was proper under the PDA's "unreasonable invasion of personal privacy" exception, former RCW 42.17.260(1) (1975); it too does not alter our analysis here.

[14] The Washington PDA closely parallels FOIA, and when construing similar provisions, judicial interpretations of that act are helpful in construing the PDA. *Hearst Corp.*, 90 Wn.2d at 128. *See also Dawson*, 120 Wn.2d at 791. The Newspapers argue that, because the provisions of FOIA and the PDA do not *differ* as to the proposition that disclosure to some is the equivalent of disclosure to all, FOIA cases are helpful. But in fact, neither the PDA nor FOIA contains such a provision.

[15] *See, e.g., North Dakota ex rel. Olson v. Andrus*, 581 F.2d 177, 180 (8th Cir. 1978); *Mead Data Cent., Inc. v. United States Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977); *Shell Oil Co. v. Internal Revenue Serv.*, 772 F. Supp. 202 (D. Del. 1991); *Wash. Post Co. v. United States Dep't of Air Force*, 617 F. Supp. 602 (D.D.C. 1985) (each discussing FOIA "exemption 5," which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), and holding that, by analogy to waiver of attorney-client privilege, an agency cannot claim that the information is exempt from disclosure); *N.W. Coalition for Alternatives to Pesticides v. Browner*, 941 F. Supp. 197, 201 (D.D.C. 1996) (holding that FOIA "exemption 4" did not apply because agency did not meet burden of showing that desired information consisted of "trade secrets and commercial or financial information obtained from a person [that are] privileged or confidential"); *Lawyers Comm. for Human Rights v. Immigration & Natural-*

Finally, BIAW and the Newspapers focus our attention on two different statutory terms—"information," which they appear to concede is confidential, and the reports themselves, which they argue must be disclosed to a limited group and, therefore, the public. They argue that under RCW 49.17.250(3), "information" is confidential but "reports" are not.

But such a construction renders the confidentiality provision meaningless. *See State v. Ritts*, 94 Wn. App. 784, 787-88, 973 P.2d 493 (1999). L&I consultants obtain "information" from the volunteer employer and its employees, and via the reports it uses this information to provide site-specific recommendations for health and safety improvements to the employer. RCW 49.17.250. As L&I points out, "Reading the report tells you all the information that [L&I] has gotten from the employer." RP (Oct. 25, 2002) at 8. BIAW and the Newspapers' reading of the statute is contrary to its plain language.

AWARD OF ATTORNEY FEES, COSTS, AND PENALTIES

In addition, L&I contends that the trial court's penalty and attorney fee award to BIAW and the Newspapers was improper. BIAW and the Newspapers assert that because they obtained the requested information, they are the prevailing parties and entitled to a fee and penalty award regardless of the outcome on appeal. We disagree.

RCW 42.17.340(4) directs a court to award penalties, attorney fees, and costs to any person who prevails against an agency in an action seeking the disclosure of public records. *Amren v. City of Kalama*, 131 Wn.2d 25, 34-35, 929

*ization Serv.*, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) (holding that agency could not claim national security disclosure exemption where documents already released to the press); *Cooper v. Internal Revenue Serv.*, 450 F. Supp. 752, 755 (D.D.C. 1977) (holding that agency could not claim confidentiality for tax returns that had been exhibits in tax court and were therefore public records). On the other hand, *OSHA Data/CIH, Inc. v. United States Department of Labor*, 220 F.3d 153 (3d Cir. 2000), relied on by L&I, contains a more pertinent statement: "[T]he posting of an annual injury and illness summary at the work site itself is a limited disclosure to a limited audience, a disclosure which is surely insufficient to render the data publicly available." 220 F.3d at 163 n.25.

P.2d 389 (1997); *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 271, 884 P.2d 592 (1994) (*PAWS* II). The statute provides:

> Any person who *prevails against an agency in any action in the courts* seeking the right to inspect or copy any public record . . . shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not less than five dollars and not to exceed one hundred dollars for each day that he was denied the right to inspect or copy said public record.

RCW 42.17.340(4) (emphasis added).

 A plaintiff "prevails" if " 'prosecution of the action could reasonably be regarded as necessary to obtain the information,' " and " 'the existence of the lawsuit had a causative effect on the release of the information.' " *Violante v. King County Fire Dist. No. 20*, 114 Wn. App. 565, 569, 59 P.3d 109 (2002) (quoting *Coalition on Gov't Spying v. King County Dep't of Pub. Safety*, 59 Wn. App. 856, 863, 801 P.2d 1009 (1990) (*COGS*)[16]). But a prevailing party is the one who has an " 'affirmative judgment rendered in his favor at *the conclusion of the entire case.*' " *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 114 Wn.2d 677, 684, 790 P.2d 604 (1990) (*PAWS* I) (emphasis added) (quoting *Tacoma News, Inc. v. Tacoma-Pierce County Health Dep't*, 55 Wn. App. 515, 525, 778 P.2d 1066 (1989), *review denied*, 113 Wn.2d 1037 (1990)).

 Both *Violante* and *COGS*[17] were cases in which an agency released records after being sued by the party seeking disclosure but before the court ruled on the disclosure request. Neither case involved a party seeking disclo-

---

[16] Under FOIA, a plaintiff substantially prevails if it demonstrates that "prosecution of the action could reasonably be regarded as necessary to obtain the information," and that "the existence of the lawsuit had a causative effect on the release of the information." *Miller v. United States Dep't of State*, 779 F.2d 1378, 1389 (8th Cir. 1985).

[17] *COGS* held that the phrase "in the courts" in RCW 42.17.340(3) modified "action"—and thus it was unnecessary for the party seeking disclosure to prevail "in the courts." 59 Wn. App. at 861-62.

sure who prevailed at trial but not on appeal. BIAW and the Newspapers are not prevailing parties and are not entitled to attorney fees, costs, or penalties under the PDA.

Reversed.

HOUGHTON and HUNT, JJ., concur.

Review denied at 154 Wn.2d 1030 (2005).