[Nos. 64819-5-I; 65810-7-I.   Division One.   May 23, 2011.]

HARLEY H. HOPPE & ASSOCIATES, INC., *Appellant*, v. KING COUNTY ET AL., *Respondents*.

AMY HOPPE, *Appellant*, v. KING COUNTY ET AL., *Respondents*.

42

44

*Jeffrey I. Tilden* (of *Gordon Tilden Thomas & Cordell LLP*) and *Pamela Jo DeVet* (of *Lee Smart PS*), for appellants.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Michael J. Sinsky, Deputy,* for respondents.

*Robert M. McKenna, Attorney General,* and *Cameron G. Comfort, Senior Assistant,* on behalf of the Department of Revenue, amicus curiae.

¶1 APPELWICK, J. — Hoppe sought to compel the King County assessor to disclose the Department of Revenue's

tax ratio audits under the Public Records Act, chapter 42.56 RCW. The County refused on the grounds that disclosure was prohibited by the Public Records Act and by Washington's property tax statutes. The trial court agreed and granted summary judgment in favor of the County. Hoppe appeals. The County cross appeals, arguing that both of these cases should have been dismissed on procedural grounds. Because the issues raised by these cases are likely to recur and because a determination is desirable to provide future guidance to the Department of Revenue, the County, and the public, we reach the merits of the consolidated cases. The trial court correctly concluded that the requested documents were exempt from disclosure. We affirm.

## FACTS

¶2 Under RCW 84.48.080(1), the Washington State Department of Revenue (DOR) uses a "ratio audit" to assess real and personal property value in each of Washington's 39 counties, and compares each county's valuation against a total valuation of property in the state. These ratio audits are used to equalize property taxes yearly and are also used to calculate each county's state school levy. In late 2007, Harley H. Hoppe & Associates Inc. (Hoppe) requested documents from the King County Department of Assessments (County) under the Public Records Act, chapter 42.56 RCW, believing that certain corporate taxpayers had received preferential tax treatment. The County responded to these requests, though Hoppe did not find the particular information it sought in the responses or disclosed documents. On February 29, 2008, Hoppe made a public records request for the 2006 state ratio audits for personal property.[1] Its request stated that the information sought was not confidential and that client names and account numbers could be redacted.

---

[1] Hoppe stated that both the DOR and the County were in possession of this document, and it could have directed its request and its lawsuit at either entity. It chose the County simply because the parties lived in King County and it was more convenient than proceeding against the DOR in Thurston County.

¶3 The requested ratio audit is drawn from a random cross section of private companies that were required to participate in the process. WAC 458-53-130(2). It contains detailed lists of assets, described by specific item, acquisition year, original cost, and depreciated value. The County notified the DOR and the audited corporate taxpayers of the request. The DOR responded that disclosure of the material was prohibited by statute and that redaction would not sufficiently safeguard the taxpayers' identities. The individual taxpayers also objected, noting that the information was private and confidential and that disclosure would place them at a competitive disadvantage. The County relayed this to Hoppe, indicating that in the absence of taxpayer permission, and in light of relevant statutes that exempt disclosure, the County was prohibited from disclosing the information. On June 23, 2008, Hoppe filed suit against the County (*Hoppe* I), seeking to compel production of the ratio audit. Hoppe and the County filed cross motions for summary judgment. On July 20, 2009, the trial court in a letter ruling denied Hoppe's motion and granted the County's.

¶4 Independent of Hoppe's public records claim, the County had filed a counterclaim in *Hoppe* I, seeking to vacate a 1991 injunction pertaining to unrelated actions of a prior county assessor. The trial court denied the County's motion for summary judgment on that counterclaim, and on November 30, 2009, the parties eventually entered a stipulated order dismissing the counterclaim entirely. At that point, there were no further claims remaining in *Hoppe* I.

¶5 On December 2, 2009, Hoppe timely filed its initial notice of appeal. But, that appeal mistakenly sought review from this court "of the Stipulated Order of Dismissal, entered on November 23, 2009, and matters concluded thereby, in particular the Order on Summary Judgment dated November 13, 2009." Hoppe had already prevailed in that counterclaim and apparently meant to appeal from the July 20, 2009 summary judgment order that had earlier dismissed its public disclosure claim. But, Hoppe did not

designate or attach that July 20, 2009 order. On December 23, 2009, the Court of Appeals moved sua sponte to determine the reviewability of Hoppe's designated orders. Hoppe, likely recognizing the error, moved to voluntarily withdraw its appeal, and this court granted the request, dismissing the appeal on January 7, 2010.

¶6 Hoppe then returned to superior court, requesting a reentry of judgment in favor of the County on the already dismissed claim from *Hoppe* I. The County opposed this, stating that judgment had already been entered back on July 20, 2009 and that there was no basis in the civil rules for reentering a judgment that had already been entered. The trial court granted Hoppe's request and reentered judgment in favor of the County. Hoppe then filed a second notice of appeal in *Hoppe* I on January 27, 2010. The County cross appealed, challenging the trial court's reentry of judgment.

¶7 On February 2, 2010, Amy Hoppe, an employee of Harley H. Hoppe & Associates, submitted a nearly identical public records request for DOR ratio audits of personal property. This request was for audits from 2007 and 2008, whereas *Hoppe* I involved a request for audits from 2006. On April 2, 2010, Amy Hoppe filed a lawsuit against the County (*Hoppe* II). After the request, a similar exchange unfolded. The County notified the DOR of the request, and the DOR again advised the County that such information was confidential and exempt from disclosure without permission from the taxpayer. The County again declined to disclose the audit information for those taxpayers that did not consent.

¶8 Her request ultimately gave rise to *Hoppe* II, a case with nearly identical facts to *Hoppe* I. The attorney and the legal arguments were nearly identical to those in *Hoppe* I. Both parties again moved for summary judgment. The trial court reached the same conclusion that it had reached a year earlier in *Hoppe* I, denying Amy Hoppe's motion and granting summary judgment in favor of the County.

¶9 Amy Hoppe filed a notice of appeal in *Hoppe* II on July 27, 2010, and Hoppe moved this court to consolidate the two appeals. This court granted Hoppe's consolidation request on August 17, 2010.

## DISCUSSION

¶10 Before reaching the merits of Hoppe's appeal, we begin by addressing the arguments raised by the County on cross appeal that these consolidated cases should be dismissed on procedural grounds. The County first argues that the trial court erred by reentering judgment in favor of the County on January 21, 2010. It argues if the trial court had not reentered judgment, the time for Hoppe to appeal would have begun running much earlier and the appeal from *Hoppe* I would be untimely. Second, the County argues that *Hoppe* II should be barred by res judicata and collateral estoppel.

### I. *Hoppe* I: Timeliness of Appeal

¶11 The County contends that the July 20, 2009 order by the trial court granting summary judgment in favor of the County resolved the claim at issue in *Hoppe* I and constituted a final, dispositive judgment. RAP 5.2 provides 30 days for a party to file a notice of appeal, following a final, appealable judgment. The County concedes that the 30-day clock for filing an appeal should not have begun running on July 20, 2009 in this case, because of the then still pending counterclaim. But, once that counterclaim was resolved by stipulation on November 30, 2009 the 30-day clock should have begun running. It was the only remaining claim in the case, and its resolution made the earlier July 20, 2009 order granting summary judgment a final, appealable one.

¶12 Hoppe's initial notice of appeal in *Hoppe* I was timely filed on December 2, 2009, less than 30 days from November 30, 2009. But, Hoppe's appeal mistakenly focused on the County's counterclaim, rather than on the July 20, 2009 summary judgment order in favor of the County.

Instead of seeking to amend the appeal in that timely notice of appeal, Hoppe withdrew its appeal altogether and then returned to the trial court seeking reentry of judgment. The County argues that there was no basis in the civil rules for the trial court to reenter judgment in favor of the County, when the claim at issue had already been conclusively resolved by the July 20, 2009 judgment.

¶13 Hoppe correctly argues that the trial court's initial ruling in the County's favor on summary judgment did not constitute a final, appealable order when it was issued, due to the pending unresolved issue in the counterclaim. But, Hoppe goes on to suggest that the summary judgment order did not become appealable merely because a stipulated order resolved the counterclaim. Hoppe's assertion is unfounded. "In ordinary usage, a 'final judgment' is '[a] court's last action that settles the rights of the parties and disposes of all issues in controversy . . . .' " *Wachovia SBA Lending, Inc., v. Kraft*, 165 Wn.2d 481, 492, 200 P.3d 683 (2009) (alterations in original) (quoting BLACK'S LAW DICTIONARY 859 (8th ed. 2004)). The July 20, 2009 summary judgment conclusively determined Hoppe's public records claim, and when the only remaining claim in the case was resolved on November 23, 2009, the summary judgment became final and reviewable. Hoppe presents no authority to support or justify the reentry of judgment, following a judgment that already conclusively resolved the issue. Hoppe's notice of appeal in *Hoppe* I was filed more than 30 days after the final judgment became appealable. We hold that the trial court erred by reentering judgment and the appeal in *Hoppe* I is untimely.

## II. *Hoppe* II: Res Judicata and Collateral Estoppel

¶14 The County raises the argument that res judicata and collateral estoppel bar the challenge raised in *Hoppe* II. The applicability of res judicata and collateral estoppel is a question of law that this court reviews de novo. *Lynn v. Dep't of Labor & Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005).

¶15 Res judicata prevents relitigation of the same claim where a subsequent claim involves the same (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against the claim made. *In re Estate of Black*, 153 Wn.2d 152, 170, 102 P.3d 796 (2004). Additionally, "an unappealed summary judgment is res judicata as to rights determined during summary judgment." *Id.*

¶16 The County contends that these criteria have been met: "the claim and issues in this case are the mirror image of those that were already considered and rejected in *Hoppe* I." Both Hoppe and Amy Hoppe were represented by the same legal counsel and relied on the same legal briefing and arguments. The County also points out that while the parties are not technically identical, Amy Hoppe is in privity with Hoppe, since she is both an employee and Harley Hoppe's daughter. Hoppe admitted as much in his motion to consolidate. The County cites to *In re Election Contest Filed by Coday*, 156 Wn.2d 485, 500-01, 130 P.3d 809 (2006) for the proposition that Amy Hoppe has a concurrence of identity with Hoppe. In *Coday*, the Washington Supreme Court addressed a similar question and concluded:

> [W]here "nominally different parties" pursue causes of action as voters, on behalf of the body politic generally, such parties have been found to "have sufficiently identical interests to satisfy the 'identity of the parties' inquiry" because they possess "the same legal interests as all citizens of the state."

*Id.* at 501 (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 261, 961 P.2d 343 (1998)).

¶17 While *Coday* contemplated an individual bringing a case in a slightly different context, as a voter on behalf of other state citizens, the same reasoning applies here in the public records act context; any member of the public has standing to bring such a public records request. We hold that under both theories Amy Hoppe is in sufficient privity with Hoppe to satisfy the concurrence of identity inquiry

and thus meets the third and fourth elements of a res judicata analysis. Turning to the first and second elements, the County argues that the claim and subject matter are the same in *Hoppe* I and *Hoppe* II. Hoppe responds by arguing that the subject matter is slightly different, since *Hoppe* I involved a request for records from 2006, while *Hoppe* II involved a request for records from 2007 and 2008.[2] But, we are unpersuaded by Hoppe's argument. While the specific records were from successive years, the legal question involved in the two cases is identical.

¶18 A similar analysis applies to the County's argument on collateral estoppel, which may bar litigation of an issue in a subsequent proceeding involving the same parties. *Yakima County v. Yakima County Law Enforcement Officers Guild*, 157 Wn. App. 304, 331, 237 P.3d 316 (2010). The party seeking to avoid litigation of an issue must show " 'that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.' " *Id.* at 331-32 (quoting *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004)). As with res judicata, collateral estoppel applies here because the legal issues presented in *Hoppe* I are identical to those in *Hoppe* II. Indeed, Hoppe relies on the same legal arguments and briefing for both cases. Accordingly, either res judicata or collateral estoppel may apply here to prevent our hearing *Hoppe* II on the merits.

¶19 While these preclusive doctrines would render the appeal moot, there are several important reasons why it is appropriate to address the merits here. And, doing so makes sense from the standpoint of judicial effi-

---

[2] Hoppe also argues that since *Hoppe* I is on appeal it does not qualify as an "unappealed summary judgment" that would bar Amy Hoppe's subsequent public records request.

ciency and public interest. This court may consider a matter, though moot, if it is of continuing public interest. *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). "The three factors considered essential are: (1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur. Arguably a fourth factor exists, that being the level of genuine adverseness and the quality of advocacy on the issues." *Id.* (citation omitted). Here, each of the factors is satisfied: the parties have presented well-briefed arguments on the merits; the public, the County, and the DOR have a continuing interest in the resolution of this issue; and the same issue is likely to recur until it is resolved. Indeed, at oral argument, Hoppe's counsel expressed his intention to continue to return to court with a new plaintiff should these cases be dismissed without a resolution on the merits. Accordingly, we address the merits here.

III. Exemptions from Disclosure

¶20 Hoppe argues that the trial court erred in denying Hoppe's motion for partial summary judgment and granting the County's motion for summary judgment. Hoppe's argument, in essence, is that the ratio audit should have been disclosed in response to its public records request, because there was no applicable exemption under the Public Records Act or under Washington's property tax statutes.

¶21 This court reviews summary judgment orders de novo. *Hadley v. Maxwell*, 144 Wn.2d 306, 310, 27 P.3d 600 (2001). Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Decisions under the public disclosure act, former chapter 42.17 RCW,

or the Public Records Act[3] are reviewed de novo, as issues of statutory construction. *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 208-09, 189 P.3d 139 (2008).

¶22 The DOR is specially charged with interpreting and administering relevant tax statutes in RCW 84.08.080:

> The department of revenue shall, with the advice of the attorney general, decide all questions that may arise in reference to the true construction or interpretation of this title, or any part thereof, with reference to the powers and duties of taxing district officers, and such decision shall have force and effect until modified or annulled by the judgment or decree of a court of competent jurisdiction.

"While 'the ultimate authority' for determining a statute's meaning remains with the court, considerable deference will be given to the interpretation made by the agency charged with enforcing a statute." *S. Martinelli & Co. v. Dep't of Revenue*, 80 Wn. App. 930, 937, 912 P.2d 521 (1996) (internal quotation marks omitted) (quoting *Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 363, 841 P.2d 752 (1992)). Here, the DOR expressly advised the County that disclosure of the tax ratio audit is prohibited under Washington property tax law. The DOR's interpretation of the statutory exemptions to disclosure is thus entitled to some weight here on appeal.

¶23 The Public Records Act generally requires state and local agencies to disclose all public records upon request, unless the record falls within a specific Public Records Act exemption or other statutory exemption. *Bellevue John Does 1-11*, 164 Wn.2d at 209; RCW 42.56-.070(1). The Public Records Act "shall be liberally construed and its exemptions narrowly construed to promote this

---

[3] Formerly part of chapter 42.17 RCW, the public records provision of the public disclosure act was enacted in 1972, now codified at chapter 42.56 RCW. *Bellevue John Does 1-11 v. Bellevue Sch. Dist. No. 405*, 164 Wn.2d 199, 209, 189 P.3d 139 (2008). Chapter 42.56 RCW is referred to as the Public Records Act. RCW 42.56.020.

public policy and to assure that the public interest will be fully protected." RCW 42.56.030; *Morgan v. City of Federal Way*, 166 Wn.2d 747, 753, 213 P.3d 596 (2009). Accordingly, the agency withholding the public records bears the burden of proof to show the applicability of a statute that exempts or prohibits disclosure. *Bellevue John Does 1-11*, 164 Wn.2d at 209. But, where the legislature has exempted disclosure, a court has no authority to thwart that legislative mandate. *Bldg. Indus. Ass'n of Wash. v. Dep't of Labor & Indus.*, 123 Wn. App. 656, 666, 98 P.3d 537 (2004). The Public Records Act itself serves as the starting point, enumerating the applicable exemptions to disclosure here:

> The following personal information is exempt from public inspection and copying under this chapter:
>
> . . . .
>
> (3) Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would: (a) Be prohibited to such persons by RCW 84.08.210, 82.32.330, 84.40.020, [or] 84.40.340 . . . ; or (b) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.

RCW 42.56.230. Therefore, personal information is exempt from disclosure if (1) any listed statute prohibits disclosure, (2) disclosure would violate the right to privacy, or (3) disclosure would result in unfair competitive disadvantage. The County needs to prove only one exemption to prevent disclosure. Hoppe argues that none of the exemptions apply.

### A. "Personal Information"

¶24 Before addressing the exemptions, Hoppe first argues that RCW 42.56.230 should not apply at all because the ratio audit information is not "personal information." Hoppe states that the requested tax information "is not 'personal information' because it does not relate to or affect a particular individual or his or her private concerns." Indeed, it affects a corporation, rather than an individual.

But, Hoppe's interpretation is unpersuasive. The relevant subsection addresses information pertaining to "any taxpayer," RCW 42.56.230(3), and the audited corporations are taxpayers. The first statute cross-referenced therein, RCW 84.08.210, supports this interpretation. It defines "tax information" as including "proprietary business information"—the sort of information that is generally possessed not only by individuals but by business entities. RCW 84.08.210(1). And, elsewhere in the same chapter on property taxes, "person" is defined to include any "firm, company, association, or corporation." RCW 84.04.075. Therefore, RCW 42.56.230 and its exemptions apply to personal information relating to corporate entities.

### B. RCW 84.08.210 and Unfair Competitive Disadvantage

¶25 While both parties assert arguments about the applicability or inapplicability of the various exemptions contained in RCW 42.56.230, the County need only demonstrate that one such exemption applies in order to prevail. Here, the County satisfies its burden by the first cross-referenced tax exemption, RCW 84.08.210, and by the language of the Public Records Act's own exemption at RCW 42.56.230(3)(b). Both provisions prohibit the disclosure of any tax information that if shared, would "result in [an] unfair competitive disadvantage to the taxpayer." RCW 42.56.230(3)(b); RCW 84.08.210(1). Publishing such proprietary business information obtained by the DOR in the course of its audit would disadvantage the audited taxpayer. Accordingly, we need not analyze the other possible exemptions.

¶26 RCW 84.08.210(2) provides broadly: "Tax information is confidential and privileged, and except as authorized by this section, neither the department nor any other person may disclose tax information." This statute thus imposes an overarching general prohibition against the disclosure of tax information. Indeed, subsection (4) makes any violation of this section a gross misdemeanor criminal

offense.[4] RCW 84.08.210(4). RCW 84.08.210(3) lists several exceptions to the general prohibition on disclosure of tax information, but none of these are applicable here, nor does Hoppe assert any of these exceptions. Instead, Hoppe argues that the tax ratio audits it seeks do not qualify as tax information at all under the statute; it argues that RCW 84.08.210 has no application in this case since there is no tax information at issue. The section expressly defines "tax information" as follows:

> For purposes of this section, "tax information" means confidential income data and proprietary business information obtained by the department in the course of carrying out the duties now or hereafter imposed upon it in this title that has been communicated in confidence in connection with the assessment of property and that has not been publicly disseminated by the taxpayer, *the disclosure of which* would be either highly offensive to a reasonable person and not a legitimate concern to the public or *would result in an unfair competitive disadvantage to the taxpayer*.

RCW 84.08.210(1) (emphasis added). The information Hoppe sought undoubtedly consists of nondisseminated and proprietary business information obtained by the DOR in the course of its duties. And, Hoppe's argument that the tax ratio audits are not tax information strains any plain definition of those words. But, Hoppe focuses its argument on the last component of the definition and argues that information is not tax information under the statute unless disclosure "[(1)] would be either highly offensive to a reasonable person and not a legitimate concern to the public or [(2)] would result in an unfair competitive disadvantage to the taxpayer." RCW 84.08.210(1). If the disclosure of the ratio audits would result in unfair competitive disadvantage, then they qualify as tax information, the disclosure of which would be broadly and plainly prohibited by RCW 84.08.210. Hoppe's argument

---

[4] Indeed, three of the exemption statutes cross-referenced in RCW 42.56.230 impose criminal sanctions for disclosure. RCW 84.08.210(4); RCW 84.40.340(2); RCW 82.32.330(6). The County describes these provisions as a clear indication of the legislature's resolve in safeguarding the privacy of taxpayer information.

under this statute thus exactly mirrors its argument made under RCW 42.56.230(3)(b).

¶27 Hoppe argues that the County has not carried its burden to prove that any competitive disadvantage would result from disclosure of the ratio audits. Hoppe also argues that any potential disadvantage would be avoided by redaction. But, the County has provided ample evidence to the contrary. For example, a declaration from PACCAR Inc., one of the audited companies in question, states:

> [D]isclosure of such information would enable competitors to discover among other matters: (1) the specific nature of equipment used in PACCAR's assembly process; (2) aspects of PACCAR's business model, such as what assets are owned, as opposed to leased; (3) the purchase price of PACCAR equipment and machinery, which may have potential use in negotiating its own acquisitions; and (4) the year of acquisition, useful remaining life and the associated likelihood of incurring expenses to replace PACCAR assets.

Additionally, some of the assets could be covered by patents, intellectual property protections, nondisclosure agreements with various vendors or third parties, and trade secret regulations. The Boeing Company, another audited company, listed similar reasons why disclosure could reveal damaging information to competitors about Boeing's assets, business model, remaining useful life of property, etc. And, as the County points out, the audited companies would be disadvantaged in relation to competitors because they would not have parallel access to such information from other businesses that were not subject to the random audit.

¶28 The DOR and impacted taxpayers have also laid out why redaction would be inadequate to avoid or mitigate the disadvantage. There are unique aspects of audited asset listings that would enable someone reading such records to determine a company's identity, even with taxpayer names or account numbers redacted. The Public Records Act provides for redaction of certain information:

> Except for information described in RCW 42.56.230(3)(a) . . . , the exemptions of this chapter are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought.

RCW 42.56.210(1). While that section contemplates the use of redaction and deleting certain information, it expressly states such redaction may not be applied in the present situation, where Hoppe's request deals with "information described in RCW 42.56.230(3)(a)." RCW 42.56.210(1). Redaction cannot render documents disclosable that are otherwise subject to the exemptions discussed here.

¶29 The County has met its burden by providing evidence of how disclosure of the ratio audits would result in unfair competitive disadvantage to the audited taxpayers. The requested ratio audits undoubtedly qualify as tax information, as contemplated by RCW 84.08.210(1), and are thus barred from disclosure, either under RCW 84.08.210 or under the Public Disclosure Act's own exemption, RCW 42.56.230(3)(b). We hold that the County properly refused to disclose the ratio audits and affirm the trial court's order granting summary judgment to the County.

## IV. Attorney Fees

¶30 Hoppe seeks attorney fees pursuant to RAP 18.1, based on the attorney fees provision in the Public Records Act, RCW 42.56.550(4). That provision permits a prevailing citizen to receive reasonable fees and costs, as well as a discretionary award for each day that it was denied the right to inspect the public record. *Id.* Hoppe has not prevailed on appeal. We decline to award attorney fees.

¶31 We affirm.

Cox and SPEARMAN, JJ., concur.

Review denied at 172 Wn.2d 1019 (2011).