IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SCOTSMAN GUIDE, INC., F/K/A, SCOTSMAN GUIDE MEDIA, INC.,

        Respondent,

        v.

BRIAN SIMMONS,

        Appellant.

No. 86745-8-I

DIVISION ONE

PUBLISHED OPINION

HAZELRIGG, C.J. — Brian Simmons, a one-third owner of Scotsman Guide Inc. (SGI), appeals from rulings on cross motions for summary judgment in a declaratory judgment action initiated by SGI that stemmed from Simmons' request for corporate records under RCW 23B.16.020. SGI had been voluntarily producing similar records for several years after Simmons' first records request but partially denied his second. Because Simmons failed to demonstrate good faith and a proper purpose under RCW 23B.16.020(3), and neither res judicata nor collateral estoppel bars SGI's claim, the trial court did not err when it granted SGI's motion and denied Simmons'. Accordingly, we affirm.

FACTS

SGI, founded in 1985 by Geary and Mary Britton-Simmons, operates as a media and financial technology company. It offers advertising and mortgage broker lead generation services through digital, print, and online platforms. By 2015, their

sons, Brian Simmons, Kevin Gray, and Todd Belmond, each owned or controlled one-third of SGI's stock. By 2018, Simmons served as SGI's chief executive officer (CEO), Gray as chief operating officer, and Belmond as executive vice president of sales.

A dispute emerged in 2018 regarding the continued operation of Ask A Lender LLC (AAL), a subsidiary SGI had created in 2014. By 2017, Simmons, Gray, and Belmond equally owned AAL. AAL was a member-managed limited liability company, and Simmons was the managing member. Between 2015 and 2018, AAL reported net losses totaling $2.42 million. After accounting for expenses SGI incurred in support of AAL, an outside review estimated the cumulative loss at $4.94 million. As the managing member, Simmons pushed to keep AAL active despite mounting losses, but in September 2018, his brothers voted to shut down AAL.

Gray and Belmond disagreed with Simmons' approach, and in October 2018, SGI held a shareholder meeting and created its first board of directors. Gray and Belmond elected themselves to the board but excluded Simmons. Acting as board members, they removed Simmons as CEO of SGI and placed him on administrative leave. In November 2018, they also removed him as managing member of AAL. SGI continued to pay Simmons through the end of 2018, though he no longer held any operational or management responsibilities in either entity.

The rift among the brothers deepened, triggering years of litigation, arbitration, and administrative disputes, which ultimately involved law enforcement, the Washington State Bar Association, and the State Board of Accountancy.

In November 2018, Simmons began requesting access under RCW 23B.16.020 to a wide range of corporate records. SGI complied with most of these requests and continued to do so for approximately 18 months through June 2020.

On July 1, 2020, Simmons filed a lawsuit against SGI in Snohomish County Superior Court (SGI I). He claimed SGI had failed to produce records to which he was entitled under RCW 23B.16.020(2). His request exceeded the standard disclosures provided under subsection (1) and sought detailed operational documents, including monthly financial statements, bank records, ledgers, journal entries, payroll data, tax documents, and board meeting excerpts. In his complaint, Simmons argued he needed these records to conduct a forensic accounting and assess SGI's financial health. He cited his one-third ownership interest and alleged that Gray and Belmond had mismanaged SGI, misappropriated company assets, and made improper distributions.

On October 20, 2020, the trial court granted Simmons' motion for an order to permit inspection and copying of the records he demanded. On October 29, SGI moved for reconsideration and sought to narrow the scope of production and costs. On November 20, the trial court partially granted the motion for reconsideration and limited the order to records existing as of that date:

> This court's order does not apply to documents coming into existence in the future after the date of this order, even if such documents are arguably of the same or similar nature. If the parties cannot agree as to what must be produced pursuant to law as to future documents, then the matter must be re-noted for a future court hearing. This court cannot make an advisory ruling as to future requests, as I do not have the facts now as to whether future requests will fall within the statute, be overbroad, lack specificity, or be overly burdensome.

Despite the conclusion of the litigation in SGI I, SGI voluntarily agreed to provide Simmons with quarterly updates of similar operational records. SGI maintained that it did so only to reassure Simmons that no mismanagement was occurring and did not intend to continue the disclosures indefinitely. The court entered an agreed final order on August 31, 2021, but the scope or duration of future disclosures was not outlined in any written agreement. SGI continued to produce records through December 22, 2022, first monthly and then quarterly.

On January 31, 2023, SGI filed a complaint against Simmons (SGI II) and sought declaratory relief that it no longer had a legal obligation to provide operational records under RCW 23B.16.020(2). SGI voluntarily dismissed that case on March 2.

On April 26, Simmons sent a new records request to Gray and Belmond under RCW 23B.16.020. In his demand letter, Simmons again cited his significant financial interest and asserted his purpose was to understand the financial condition of the company. Unlike SGI I, Simmons made no allegations of fraud, mismanagement, or improper distributions. Without waiving its objection to the April 2023 request, SGI provided some records "on this one occasion," but refused further production.

On June 13, SGI filed the current suit (SGI III). It sought declaratory relief that it no longer had a duty to comply with Simmons' request under RCW 23B.16.020(2). On July 27, Simmons answered SGI's complaint, and both parties later filed cross motions for summary judgment. SGI argued that Simmons' April 2023 request failed to meet the good faith and proper purpose requirements of RCW

23B.16.020(3). Simmons countered that SGI's claim was barred by res judicata and failed to present a justiciable controversy. He again cited his ownership interest and claimed an ongoing need to understand SGI's financial condition as the basis for his records request.

The trial court granted SGI's motion and denied Simmons'. It rejected Simmons' res judicata argument and contention that there was no justiciable controversy. The trial court then held as a matter of law that Simmons' April 2023 records request was not made in good faith or for a proper purpose. The court emphasized that Simmons had not presented credible evidence of any concern beyond personal mistrust. Having resolved the issue under RCW 23B.16.020(3)(a), the court did not address whether the request met the specificity and relatedness requirements under subsections (b) and (c).

Simmons timely appealed.

ANALYSIS

We review summary judgment rulings de novo. *Davies v. MultiCare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). Summary judgment is appropriate only when there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Saralegui Blanco v. Gonzalez Sandoval*, 197 Wn.2d 553, 557, 485 P.3d 326 (2021). This court stands in the same position as the trial court and views the facts in the light most favorable to the nonmoving party. *Young v. Key Pharms., Inc.,* 112 Wn.2d 216, 226, 770 P.2d 182 (1989). On review, we may affirm summary judgment "on any ground supported by

the record." *Pac. Marine Ins. Co. v. Dep't of Revenue*, 181 Wn. App. 730, 737, 329 P.3d 101 (2014).

I.      Res Judicata

Simmons contends that the trial court erred when it refused to apply res judicata, or claim preclusion, to bar SGI's cause of action. He argues that SGI I involved the same request for records and the trial court previously determined he was entitled to inspect those records under RCW 23B.16.020(2) and (3). He also claims the evidence and legal right asserted in SGI III mirror those at issue in the earlier case. However, these arguments fail.

Res judicata bars litigation of claims that were brought or might have been brought in a prior proceeding. *Weaver v. City of Everett*, 194 Wn.2d 464, 473, 450 P.3d 177 (2019). It "precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits." *Id*. at 480. "Courts considering res judicata must be careful not to deny a litigant their day in court." *Carter v. MultiCare Health Sys*., 31 Wn. App. 2d 755, 771, 553 P.3d 98 (2024). Whether res judicata applies is a question of law that we review de novo. *Weaver*, 194 Wn.2d at 473. "The party asserting res judicata bears the burden of proof." *Penner v. Cent. Puget Sound Reg'l Transit Auth.*, 25 Wn. App. 2d 914, 924, 525 P.3d 1010, *review denied*, 1 Wn.3d 1026 (2023).

"'Res judicata prevents relitigation of the same claim where a subsequent claim involves the same (1) subject matter, (2) cause of action, (3) persons and parties, and (4) quality of persons for or against the claim made.'" *Id*. (quoting *Harley H. Hoppe & Assocs. v. King County*, 162 Wn. App. 40, 51, 255 P.3d 819 (2011)).

Here, SGI argues that the cause of action and subject matter elements of res judicata are not met and does not challenge the remaining elements. Simmons argues that the SGI I judgment necessarily resolved the issues raised in SGI III because he again seeks access to the same categories of documents under the same statute and for the same purpose: his stated need to understand SGI's financial condition as a one-third shareholder.

In response, SGI cites the trial court's express limitation in its ultimate ruling in SGI I, which stated the following:

> This court's order does not apply to documents coming into existence in the future after the date of this order, even if such documents are arguably of the same or a similar nature. If the parties cannot agree as to what must be produced pursuant to law as to future documents, then the matter must be re-noted for a future court hearing. This court cannot make an advisory ruling as to future requests, as I do not have the facts now as to whether future requests will fall within the statute, be overbroad, lack specificity, or be overly burdensome.

SGI contends that this language forecloses any assertion that the trial court's ruling in SGI I reached future records requests. It further argues that res judicata does not apply because the current case involves a distinct cause of action arising from a different factual context, specifically, a later request made after SGI voluntarily produced documents for years. According to SGI, the purpose and evidentiary basis for Simmons' April 2023 request differed from those he offered in SGI I. SGI highlights that Simmons acknowledged in his December 5, 2023 deposition that he had no evidence of corporate mismanagement or malfeasance as of 2023, and thus, it avers the claims in SGI III do not share the same cause of action and subject matter as the prior litigation. Specifically, the exchange during the deposition occurred as follows:

[SGI's Counsel:] Okay. As you sit here today, are you—are you saying that you are aware of no acts of corporate mismanagement or officer or director malfeasance?

[Simmons:] Can you define that?

[SGI's Counsel:] As you understand it as a layperson with your educational background.

[Simmons:] No.

[SGI's Counsel:] No, you don't have it or—or are aware of no such acts; is that correct?

[Simmons:] No.

[SGI's Counsel:] That's not correct?

[Simmons:] Sorry. Yes.

[SGI's Counsel:] Let's—let's get the answer.

As you sit here now, you are not—is it correct that you are not aware or have reason to suspect of [sic] any acts of corporate mismanagement or officer or director malfeasance; is that correct?

[Simmons' Counsel]: Object—object to the form. I think that differs slightly from your original question.

[SGI's Counsel]: Okay. Then that's why I wanted to get the answer, question and answer clear. It was a little garbled.

[Simmons]: I would say this—this lawsuit that's filed is a waste of company resources and is mismanagement.

[SGI's Counsel]:

Q. Okay. Anything else?

[Simmons:] No.

[SGI's Counsel:] Okay. So there—other than filing this lawsuit, as you sit here right now, you're not aware or have reason to suspect of [sic] any acts of corporate mismanagement or officer or director malfeasance?

[Simmons:] Right. Correct. Having said that, I also don't have all the information.

To determine if two claims share an identical cause of action, courts consider whether "'(1) prosecuting the second action would destroy rights or interests established in the first judgment, (2) the evidence presented in the two actions is substantially the same, (3) the two actions involve infringement of the same right, and (4) the two actions arise out of the same transactional nucleus of facts.'" *Mason v. Mason*, 19 Wn. App. 2d 803, 829, 497 P.3d 431 (2021) (quoting *Marshall v. Thurston County*, 165 Wn. App. 346, 354, 267 P.3d 491 (2011)). "'[T]he res judicata

test is a conjunctive one requiring satisfaction of all four elements.'" *Spokane County v. Miotke*, 158 Wn. App. 62, 66-67, 240 P.3d 811 (2010) (quoting *Hisle v. Todd Pac. Shipyards Corp.,* 151 Wn.2d 853, 866, 93 P.3d 108 (2004)).

Simmons argues the evidence and right asserted remain the same and that the April 2023 request sought records materially similar to those previously ordered produced. SGI counters that Simmons' current stated purpose for the April 2023 request departs materially from the one he presented in SGI I, which involved an investigation into alleged self-dealing and misuse of corporate funds. Apart from the obvious factual distinction that Simmons made the April 2023 request for access to corporate records years later and under entirely different circumstances, the request at issue now emphasized Simmons' need for the information in order to "calculate the estimated quarterly taxes" that he owed and noted that he was "unable to obtain a conventional mortgage without a copy of Scotsman Guide's corporate tax return."

Critically, the trial court here found that the final order in SGI I granted relief based on a limited and fact-specific record, namely, a credible allegation of financial misconduct. Simmons did not renew that contention in his April 2023 request or anywhere in the SGI III litigation. Accordingly, the cause of action element is not satisfied. The change in purpose, supported by Simmons' own statements and deposition testimony, is sufficient to conclude that the April 2023 claim does not arise from the same nucleus of facts as those at issue in SGI I. As such, the claims lack identity of cause of action and res judicata does not apply.[1]

---

[1] Because all elements of res judicata must be met in order for the doctrine to apply, we need not review the subject matter element.

Separately, Simmons assets for the first time on appeal that that the trial court erred in not applying the doctrine of collateral estoppel. A party must raise an issue at trial in order to preserve

II.     Interpretation of RCW 23B.16.020(3)

Simmons avers he was entitled to the corporate records under RCW 23B.16.020(3) and Washington law does not require shareholders to show suspected misconduct in order to inspect corporate records.  SGI, however, argues that Simmons' April 2023 request did not satisfy RCW 23B.16.020(3) because he failed to show good faith or a proper purpose.  We agree with SGI.

Statutory interpretation is a question of law reviewed de novo.  *Puget Sound Energy v. Dep't of Revenue*, 158 Wn. App. 616, 620, 248 P.3d 1043 (2010).  Our goal is to determine the legislature's intent, and "if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent."  *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

We begin with the statutory language and read it in context.  *Dobson v. Archibald*, 1 Wn.3d 102, 107, 523 P.3d 1190 (2023).  Where a term is undefined by

---

it for appeal.  RAP 2.5(a).  The appellate court may refuse to review any claim of error that was not raised in the trial court.  *Fireside Bank v. Askins*, 195 Wn.2d 365, 374, 460 P.3d 157 (2020).  But, RAP 2.5(a) provides that three types of unpreserved errors may be raised for the first time on appeal: "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right."

Here, Simmons makes no attempt to establish that the alleged error was manifest or otherwise satisfy RAP 2.5(a)(3).  During oral argument before this court, Simmons conceded that he did not argue collateral estoppel before the superior court.  Wash. Ct. of Appeals oral argument, *Scotsman Guide, Inc. v. Simmons*, No. 86745-8-I (May 28, 2025), at 1 min., 50 sec. to 3 min., 2 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025051195/.

Instead of addressing the requirements of RAP 2.5(a), Simmons relied on *Bordeaux v. Ingersoll Rand Co.* in his reply brief to argue that res judicata and collateral estoppel are "'kindred doctrines designed to prevent relitigation of already determined causes and curtail multiplicity of actions and harassment in the courts . . .' and are 'at times indistinguishable and frequently interchangeable.'"  71 Wn.2d 392, 395, 429 P.2d 207 (1967).  Because Simmons fails to satisfy RAP 2.5(a), and the "party asserting collateral estoppel bears the burden of proof," we decline to review Simmons' collateral estoppel claim.  *Reeves v. Mason County*, 22 Wn. App. 2d 99, 111, 509 P.3d 859 (2022); *see also State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 304, 57 P.3d 300 (2002).

statute, we may rely on a dictionary definition to discern the plain meaning of the term. *Nissen v. Pierce County*, 183 Wn.2d 863, 881, 357 P.3d 45 (2015). If there is more than one reasonable interpretation, we turn to the canons of statutory construction, legislative history, and other case law to determine the legislative intent. *Cockle v. Dep't of Lab. & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

RCW 23B.16.020(2) allows shareholders to inspect a corporation's operational records, including accounting records and meeting minutes, only if the conditions in subsection (3) are satisfied. That subsection states:

> A shareholder may inspect and copy the records described in subsection (2) of this section *only if*:
>     (a) The shareholder's demand is made *in good faith* and *for a proper purpose*;
>     (b) The shareholder describes *with reasonable particularity* the shareholder's purpose and the records the shareholder desires to inspect; and
>     (c) The records are *directly connected with the shareholder's purpose*.

RCW 23B.16.020(3) (emphasis added). The statute does not define "good faith" or "proper purpose." However, its structure, including the application of "only if" to each of the subsections, signals that the requirements set out in (a)-(c) are all threshold conditions that shareholders must affirmatively satisfy. A plain reading of subsection (3) in its entirety places the burden to satisfy this preliminary showing on the shareholder.

Simmons argues that the trial court's interpretation of RCW 23B.16.020(3) is overly expansive and a shareholder need not suspect wrongdoing to satisfy RCW 23B.16.020(3)(a). He argues that a substantial ownership interest alone, particularly in a closely held corporation, justifies a desire to understand the company's financial

condition. Simmons relies on *State ex rel. Grismer v. Merger Mines Corp.*, in which our Supreme Court stated that a shareholder's request is presumed proper "until the contrary is shown." 3 Wn.2d 417, 421, 101 P.2d 308 (1940). During oral argument before this court, Simmons reiterated his position that Washington law entitles him to a presumption that his request was made for a proper purpose and this presumption applies automatically.[2]

SGI responds that the presumption described in *Merger Mines* predates the Washington Business Corporation Act (WBCA), Title 23B RCW, which the legislature enacted in 1989. SGI notes that the WBCA codifies shareholder inspection rights and expressly limits access to operational records to requests that meet the conditions in RCW 23B.16.020(3). SGI argues that the shareholder, not the corporation, bears the burden of showing good faith and proper purpose. SGI also points to Delaware's "credible basis" standard as persuasive authority. That standard rejects generalized curiosity and requires the shareholder to present some factual basis that justifies the request.

The parties disagree as to the burden of proof and the standard of review for determination of a shareholder's right to access corporate records under RCW 23B.16.020(2) and (3). Simmons argues that these issues are questions of statutory interpretation for which the standard of review is de novo. SGI correctly states that no Washington cases have addressed the standard of review for such inquiry. The "substantial evidence" standard applies to a court's determination that a corporation acted in good faith. *Robinson v. Am. Legion Dep't of Wash., Inc.*, 11 Wn. App. 2d

---

[2] Wash. Ct. of Appeals oral argument, *supra,* at 4 min., 37 sec.

274, 286-87, 452 P.3d 1254 (2019). SGI argues that it stands to reason that the same standard would apply to a court's determination that a shareholder's request was not made in good faith and for a proper purpose.

The trial court here agreed with SGI and stated,

The statute does not identify who bears the burden of proving the criteria in RCW 23B.16.020(3). SGI asks this [c]ourt to adopt the Delaware rule requiring that the shareholder "demonstrate, by a preponderance of the evidence, that 'each category of books and records is essential to accomplishment of the [shareholder's] articulated purpose for the inspection." *See* Plaintiffs Motion for Summary Judgment, p. 17, *citing Okla. Firefighters Pension & Rel. Sys. v. Amazon.com, Inc.*, No. CV 2021-0484-LWW, 2022 WL 1706018, at *5 (Del. Ch. June 1, 2022). . . . Simmons does not directly respond to SGI' s argument. Instead, Simmons argues that (1) the cases SGI cites are inapplicable, (2) Judge Farris never considered these cases in SGI I, and (3) he has met all the factors "set forth in the *controlling* Washington statute." *See* Defendant's Response in Opposition to Plaintiffs Motion for Summary Judgment, p. 19-20 (*italics* added).

The legislature enacted the Washington Business Corporation Act ("WBCA") in 1989 under RCW Title 23B. In doing so, the legislature codified a shareholder's common law right of inspection. *See Robinson v. American Legion Dept. of Washington, Inc.*, 11 Wash.App.2d 274, 288, 452 P.2d 1254 (2019), *rev. denied*, 195 Wash.2d 1026 (2020). Under the common law, a shareholder had a right, at reasonable times, to inspect and examine the corporate books, and the corporation had the burden of proving the shareholders request was not in the interests of the corporation. *State ex rel. Weinberg v. Pacific Brewing & Malting Co.*, 21 Wash. 451, 58 P. 584 (1899). Under the WBCA, the legislature created classes of corporate records with different requirements for shareholder inspection. *See* RCW 23B.16.020(1) (records any shareholder is entitled to as a matter of right); RCW 23B.16.020(2) (records shareholders can only access if the requirements of RCW 23B.16.030 [sic] are met).

Under RCW 23B.16.020(2), a shareholder may inspect and copy operational records "*if* the shareholder meets the requirements of subsection (3). . . ." Subsection (3) contains similar language limiting a shareholder's right "*only if*" the shareholder's request meets the requirements in subsections (a)-(c). *See* RCW 23B.16.020(3) (italics added). Although the statute does not specifically state that a shareholder bears the burden of proof, it contains the words "*if*" and "*only if*" in conjunction with a shareholder's expanded right to access

- 13 -

operational records. This leads to the conclusion the initial burden of proving the requirements in RCW 23B.16.020(3) is on the shareholder. The shareholder is the only one with knowledge of the purpose for the request, the specific records needed, and the reasons why the records relate to his purpose.

Although RCW 23B.16.020(3) and Washington caselaw does not define "proper purpose," the Delaware standard requiring a shareholder to show more than merely wanting to assess a company's financial situation makes sense. Mismanagement or misconduct are the traditional reasons shareholders seek access to these the type of detailed, operational records in RCW 23B.16.020(2). *See Thompson* [*v. Amazon.com, Inc.*], 26 Wash.App.2d [457,] 471[, 528 P.3d 375 (2023)] (discussing Delaware law regarding proper purpose). SGI persuasively argues, and Simmons' [sic] does not dispute, that defining "proper purpose" as no more than a desire to understand the financial situation of a corporation would eliminate the distinction between the types of shareholder records identified in RCW 23B.16.020(1) and (2). Simmons argues that the legislature's failure to put a time limit on a company's obligation to produce organizational records once a shareholder establishes a proper purpose must mean a company is obligated to continue to produce records.

(Some alterations in original.)

Under the plain language of the statute, Simmons' April 2023 request falls within the scope of RCW 23B.16.020(2), and so SGI must produce records only in response to a request made in good faith and for a proper purpose that describes both the purpose and records requested with reasonable particularity and if the records sought are directly connected to that purpose. RCW 23B.16.020(3). This structure ensures that broader requests are scrutinized to protect against improper motives while still allowing shareholders meaningful access to corporate information. Washington courts have interpreted both the "in good faith" and "for a proper purpose" standards contextually, evaluating each request on its facts and in light of the statutory framework. This approach reflects a broader recognition in

Washington law that "good faith" and "proper purpose" do not carry fixed definitions but must be understood within the setting in which they arise.[3]

In 2020, Simmons expressly argued that he sought records in order to conduct a forensic audit. There, he had alleged that SGI's officers were engaging in financial misconduct, including improper distributions and mismanagement. Based on those particular assertions, the trial court ordered the production of records under RCW 23B.16.020(2).

In contrast, Simmons' April 2023 request did not allege wrongdoing. His stated purpose was as follows:

> Access to these records is essential for me to gain a comprehensive understanding of Scotsman Guide's financial condition and make informed decisions about my ownership and investment. Without timely access to financial statements, I am unable to calculate the estimated quarterly taxes I owe, which is a requirement for my ownership in Scotsman Guide as an S-corp. Moreover, it's crucial to mention that I am unable to obtain a conventional mortgage without a copy of Scotsman Guide's corporate tax return.

> In conclusion, I firmly believe that as a 1/3 shareholder of Scotsman Guide Media, Inc., it is within my right to access the relevant corporate records *to understand the organization's financial condition and protect my financial interest*, as required by RCW 23B.16.020.

(Emphasis added.) This justification does not reference any dispute over corporate management or suggest that the records are needed to investigate irregularities. Simmons does not claim that SGI withheld distributions, misused funds, or otherwise mismanaged its affairs. Again, in his deposition, Simmons

---

[3] For example, in analyzing a fee award under RCW 23B.16.040(3) in *Robinson*, we concluded that the plain language of that subsection did not limit the showing of a reasonable basis for denial of the records request, such that the corporation would not be liable for attorney fees, to simply establishing a "reasonable basis" for its belief that the purpose of the request was not proper. 11 Wn. App. 2d at 289.

acknowledged that he had no current evidence of misconduct. He stated that aside from filing the lawsuit, he was not aware of nor did he have reason to suspect any acts of corporate mismanagement or malfeasance. Additionally, he admitted that he regularly received quarterly reports, reviewed the supporting documents, and attempted to correlate them with the financial statements. He confirmed that had he noticed any material discrepancies between the supporting documents and the financial statements, he would have raised concerns at the time.

SGI had provided Simmons with detailed records, including monthly financial statements, on a consistent basis since 2020. On June 13, 2023, SGI declined to provide additional categories of documents, but continued to furnish financial statements. It asserted that the records provided were sufficient for Simmons to understand the company's financial condition, and it directed him to the 2020 court order, which limited disclosure to then-existing documents.

Given this context, we conclude that Simmons' request did not present a proper purpose under RCW 23B.16.020(3)(a). RCW 23B.16.020 distinguishes between the sort of records a corporation must always produce in response to a request from a shareholder, set out in RCW 23B.16.010(5), and the types of records, identified in subsection .020(2), that trigger the requirement for the requestor to satisfy the threshold showing of all three factors set out in subsections .020(3)(a)-(c). The fact that our legislature imposed different requirements for these distinct classes of corporate records and a clear initial burden on the requestor as to one but not the other, establishes that while a shareholder's financial interest in a company may justify a request when .010(5) records are

sought, that interest alone does not create a broad or indefinite entitlement to the operational records of the sort described in .020(2).

Because Simmons did not meet the threshold requirement in RCW 23B.16.020(3)(a), we, like the trial court, need not address whether he satisfied subsections (b) and (c).

III.     Attorney Fees

Both SGI and Simmons request attorney fees under RAP 18.1.  RAP 18.1(a) allows us to award a party attorney fees on appeal where "applicable law" permits.

Here, Simmons argues that he is entitled to fees on appeal and in the underlying matter pursuant to RCW 23B.16.040(3).  A shareholder is entitled to inspect copies of corporate records if the shareholder fulfills certain notice and purpose requirements.  RCW 23B.16.020.  Chapter 23B.16 RCW allows fees where a shareholder obtains a court order compelling production.  RCW 23B.16.040(3); *see also Nakata v. Blue Bird, Inc.*, 146 Wn. App. 267, 276, 191 P.3d 900 (2008).  However, the court did not issue an order compelling production, so subsection .040 is not implicated here.  That said, the statutory scheme also expressly provides that a company avoids fee liability if "'the corporation proves that it refused inspection in good faith because it had a reasonable basis for doubt about the right of the shareholder to inspect the records demanded.'"  *Nakata*, 146 Wn. App. at 276 (quoting RCW 23B.15.040(3)).  Because SGI had a reasonable basis to doubt Simmons' right to inspect the records based on his stated purpose, and Simmons is not the prevailing party on appeal, we deny his request.

SGI argues that it is entitled to attorney fees under RCW 4.84.185, CR 11, and RAP 18.9 and claims that Simmons' appeal is frivolous and not grounded in fact or law. "CR 11 permits reasonable attorney fees and costs incurred because of a bad faith filing of pleadings for an improper purpose or by filing pleadings that are not grounded in fact or warranted by law." *Skimming v. Boxer*, 119 Wn. App. 748, 754, 82 P.3d 707 (2004) (footnote omitted). Under RAP 18.9, this court "may order a party or counsel . . . who uses these rules for the purpose of delay, [or] files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed by the delay." RAP 18.9(a). "[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 435, 613 P.2d 187 (1980).

While Simmons did not prevail, considering the scarcity of binding authority with regard to RCW 23B.16.020(3), his appeal was not so devoid of merit that there was no reasonable possibility of success. However, because SGI prevailed, we award its reasonable attorney fees and costs, contingent upon its further compliance with the procedural requirements of RAP 18.1.

Affirmed.

WE CONCUR:

Díaz, J.

Mann, J.

- 18 -