

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ERIC HOOD, | ) | |
| | ) | No. 39618-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PRESCOTT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, A.C.J. — Eric Hood requested public records from the city of Prescott

(City). After the City responded, Hood filed an action in superior court claiming the

City's response violated the Public Records Act (PRA), ch. 42.56 RCW. The superior

court dismissed Hood's complaint on summary judgment after concluding that the City's

search for records was adequate. We conclude that Hood's evidence raised a genuine

issue of material fact as to the scope of his public records request. Because the scope of a

request necessarily affects whether a search was reasonable, the trial court erred in

granting summary judgment. We therefore reverse and remand for further proceedings.

BACKGROUND

Because this is a motion for summary judgment, the facts are set out in a light

most favorable to the nonmoving party, Eric Hood.

The City operates under a mayor-council form of government, consisting of five elected council members (Council) and an elected mayor. The City was audited by the state auditor's office (SAO) and received a preliminary draft of the "Accountability Audit Report." The final report was eventually published by the SAO on March 28, 2019. The City contends that the only people involved with the audit were the city attorney, the city clerk, and the mayor.

On September 23, 2019, Hood emailed the City a request for records under the PRA that read "I learned that your organization was recently audited by the state auditor. May I have all records it got from the auditor and all records of any response to the audit or to the audit report." Clerk's Papers (CP) at 30. Linda Vannoster, the city clerk, forwarded this request to Jared Hawkins, the city attorney.

Hawkins found the request to be "vague, ambiguous, and confusing" because it referenced an audit, but did not reference the year. CP at 77. In addition, it asked for "all records the City got from the auditor," but typically "the City provides records to the auditor, not the other way around." CP at 77. In response to this request, Vannoster emailed Hood asking for clarification and explained she could not respond to his request until he answered her questions. Specifically, she asked Hood to clarify what types of documents he was seeking such as "all documents sent by the auditor to the City [ ] including introductory letters about the audit, timing of the audit, logistical emails to staff," or if he was "referring to reports issued by the auditor." CP at 29.

2

On September 30, 2019, without answering her question directly, Hood narrowed his request:

> Please narrow my request to all records of any response to the Accountability [R]eport date 03/28/2019, # 1023325.  I am seeking communications, including attachments, between you and the auditor dated after 2/01/19 to the present, and any internal records of response to the auditor or auditor's report for the same time range.

CP at 29.  Vannoster did not ask Hood to clarify his narrowed request.

Following review, Vannoster provided the records she thought were responsive and indicated that if Hood had any questions to please advise.  Hood sent an email confirming "that he was able to download the documents from the OneDrive link."  CP at 78.  Hood did not have any further communication with the City until he filed his pro se complaint on November 2, 2020.  In his complaint, Hood alleged that "upon information and belief" the City knew that he was requesting more records than it provided and that it withheld records that were responsive to Hood's request.  In his request for relief, Hood requested the superior court order the City to promptly respond to his PRA request.  He also requested attorney fees, costs, and a penalty for withheld records.

After the complaint was served and filed, neither party took any further action on the case for nearly two years.  Eventually, the City moved for summary judgment, arguing that, at the time of Hood's request, it conducted a reasonable search and provided Hood with all records of the City's response to the March 28 report.  The City provided a

declaration from Hawkins, who stated that he found Hood's second request confusing because of the reference to two separate dates. In addition, the language "any response to the Accountability [R]eport" suggested he was "seeking records whereby City personnel responded directly to the auditor," which seemed to contradict with his request for "any internal records of response to the auditor or auditors [sic] report for the same time range." CP at 77. Hawkins' best interpretation of this request "was that he was seeking communications between the City and the Auditor in response to the audit report." CP at 78. However, to be safe, Hawkins "also looked for City communications to the auditor that predated the audit report." CP at 78.

In his declaration, Hawkins indicated that he encouraged Vannoster "to search for responsive records in City files" and, from what she shared with him, he "could tell that she had reviewed those locations where responsive records would have existed, namely physical files, electronic files, and emails." CP at 78. He compared what she shared with him to his own files, including physical files, emails, and his electronic filing system. As standard practice, the mayor and Vannoster included Hawkins "in all communications with the state auditor." CP at 78. For this reason, Hawkins found that comparing Vannoster's disclosures with his own emails allowed him to verify the City provided the responsive records requested. From Hawkins' review, he confirmed Vannoster complied with all responsive records to the SAO during the timeframe requested, including emails from Hawkins, the mayor, and Vannoster to the auditor.

Within a week of the City moving for summary judgment, Hood submitted a separate request for records from the SAO. The SAO provided records in response to Hood's request on December 13, 2022, after briefs had been submitted on the City's motion for summary judgment.

The trial court granted the City's motion for summary judgment. At a hearing on the motion, the court indicated that the City had made an adequate search and there had not been any allegations that documents were improperly withheld or redacted.

The following month, Hood filed a motion for reconsideration. In support of the motion, Hood produced records received from the SAO that he claimed were not produced by the City but were responsive to his records request. The trial court denied Hood's motion for reconsideration without comment, and this appeal followed.

ANALYSIS

1.     STANDARD OF REVIEW

Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A fact is considered "material" if it affects the outcome of the issue that is before the court. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

On appeal, this court reviews agency action under the PRA de novo. *Assoc. Press v. Wash. State Leg.*, 194 Wn.2d 915, 920, 454 P.3d 93 (2019); RCW 42.56.550(3). The PRA "generally requires state and local agencies to disclose all public records upon a request, unless the record falls within . . . [an] exemption." *Harley H. Hoppe & Assoc., Inc. v. King County*, 162 Wn. App. 40, 54, 255 P.3d 819 (2011); RCW 42.56.070(1). The PRA "'shall be liberally construed and its exemptions narrowly construed to promote this public policy and to assure that the public interest will be fully protected.'" *Id.* at 54-55 (quoting RCW 42.56.030)).

This appeal raises two challenges relating to the PRA: (1) the scope of the request, and (2) the adequacy of the search.

2.    SCOPE OF THE REQUEST

Both parties focus a significant portion of their briefing on whether the City's search was adequate. However, before a court can determine whether the search for records was adequate, it must determine the scope of the request or what records are being requested. The City contends that its reasonable interpretation of Hood's request is that he was requesting the City's responses to the audit report that was published on March 28, 2019. Hood argues that his request was more expansive, and included (1) "responsive records, including emails with the SAO," (2) "audit-related records in its council's files," and (3) "final copies of the 'preliminary draft[s]' that it produced to Hood." CP at 184. In sum, he argues that his request included records dated before the

6

final publication date, that is, from February 1, 2019 to the date of his request, September 30, 2019.

The PRA requires agencies to produce "identifiable public records." RCW 42.56.080(2). A record is considered identifiable when the request gives "a reasonable description enabling the government employee to locate the requested records." *Bonamy v. City of Seattle*, 92 Wn. App. 403, 410, 960 P.2d 447 (1998). If a request is too vague, an agency may request clarification. RCW 42.56.520. On the other hand, "[a]gencies are not required to read minds," and the request must identify the records being sought with reasonable clarity. *Cantu v. Yakima Sch. Dist. No. 7*, 23 Wn. App. 2d 57, 82, 514 P.3d 661 (2022).

Here, both parties' interpretation of the scope of the request is plausible. Hood indicated that he was "narrowing" his request to "all records of any response to the Accountability [R]eport date 03/28/2019, # 1023325." CP at 29. He then followed this sentence with either clarification or additional requests. Whether the City's interpretation of Hood's request was reasonable is a question of fact. Since the evidence is sufficient to create a genuine issue of material fact, the scope of Hood's request must be decided at a fact-finding hearing not on summary judgment.

3.      ADEQUACY OF THE SEARCH

Next, Hood appeals the trial court's determination that the City's search for records was adequate. Specifically, he argues Hawkins' declaration was conclusory and

insufficient to carry the City's burden of proof. The City argues that the trial court properly dismissed Hood's lawsuit because he failed to produce any evidence showing the City violated the PRA after Hawkins' declaration established it conducted a reasonable search for records.

When records are properly requested, the PRA "requires an adequate search that is reasonably calculated to uncover all relevant records." *Cantu*, 23 Wn. App. at 83. "A search does not need to be perfect and the 'failure to locate and produce a record is not a per se violation of the PRA.'" *Id.* (quoting *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021) (published portion); O'Dea, No. 53613-7-II, slip op. at 24 (unpublished portion), https://www.courts.wa.gov/opinions/D2%2053613-7-II%20Published%20Opinion.pdf). However, the "agency must follow leads and search sources that are likely to produce responsive records." *Id.* at 84 (quoting *Neigh. All. of Spokane County v. Spokane County*, 172 Wn.2d 702, 720, 261 P.3d 119 (2011)).

"What is reasonable depends on the facts and circumstances of each [individual] case." *Id.* at 83 (quoting *Neigh. All.*, 172 Wn.2d at 720). In determining "reasonableness," the search itself must be calculated to uncover all documents that are relevant. *Id*. at 84. Our Supreme Court has held that if the adequacy for a search is raised on summary judgment, "'the agency bears the burden beyond material doubt, of showing its search was adequate.'" *Id*. (quoting *Neigh. All.* 172 Wn.2d at 721).

To meet this burden, the agency must submit reasonably detailed nonconclusory affidavits prepared in good faith that include "the search terms, the type of search performed, and the locations searched." *Id*. The court's focus is not on whether a responsive record exists, but "on the adequacy of the search" itself. *Id*. In other words, a search may be considered adequate but "still fail to identify responsive records." *Id*. On the other hand, a search that unnecessarily narrows a request "is generally not adequate." *Id*. at 86.

In *Cantu*, we found that a search for records was inadequate when it failed to make use of wildcard symbols and failed to include all the terms in the request, thus "unreasonably narrowing the search." *Id*. at 106.

Here, regardless of the scope of the request provided by Hood, the declaration provided by Hawkins does not provide sufficient details to meet the City's burden on summary judgment. First, the only declaration provided in support of the search was from Hawkins, but he did not conduct the search and there was no declaration from Vannoster indicating her search efforts.

In addition, Hawkins' declaration did not indicate the specific search terms used, the type of searches performed, or the locations searched. We note that one of the records produced had the personal email address of the mayor redacted, with a notation that it had been redacted "to preserve the Mayor's private confidential email address." CP at 75. While this is evidence that the mayor was keeping records in a personal email

9

account, there is no indication that this account was searched for responsive records.

This is not to say that the City's search for responsive records was inadequate, but only

that Hawkins' declaration was inadequate to meet the City's burden on summary

judgment.

4.      ATTORNEY FEES

Hood argues that as the prevailing party, he is entitled to an "award," plus costs

and attorney fees on appeal and on remand. Preliminarily, we note that while a requestor

who demonstrates a violation of the PRA is entitled to costs and attorney fees at trial and

on appeal, the trial court has discretion on whether and to what extent to impose a penalty

when records are wrongfully withheld. RCW 42.56.550(4); *West v. Port of Olympia*, 183

Wn. App. 306, 318, 333 P.3d 488 (2014). Moreover, "pro se litigants are generally not

entitled to attorney fees for their work representing themselves." *Mitchell v. Washington

State Dep't of Corr.*, 164 Wn. App. 597, 608, 277 P.3d 670 (2011). Because Hood has

represented himself during this appeal, he has not incurred any attorney fees on appeal.

He may recover costs if he complies with RAP 14.1.

CONCLUSION

On remand, if the court finds that the City's search was inadequate, this would

demonstrate a violation of the PRA and Hood would be entitled to his costs and

reasonable attorney fees, assuming he was represented by an attorney. But an inadequate

search is not an independent ground for a penalty. Instead, if records were withheld

No. 39618-5-III
*Hood v. City of Prescott*

because the search was inadequate, then the "inadequate search is an aggravating factor" in determining the extent of any penalty for the wrongfully withheld records. *Id*. at 84.

We reverse the order on summary judgment and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, A.C.J.

WE CONCUR:

_____
Pennell, J.

_____
Cooney, J.

11